**WO** SC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alvalee Sears, III, <br><br>  Plaintiff, <br><br> vs. <br><br> Lieutenant Todd, et al., <br><br>  Defendants. | No. CV 09-0577-PHX-MHM (MEA) <br><br> **ORDER** |

Plaintiff Alvalee Sears, III, who is confined in the Arizona State Prison Complex-Tucson, Rincon Unit, in Tucson, Arizona, has filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed *In Forma Pauperis*. (Doc.# 1, 3.)[1] The Court will order Defendants Marrow, Springstein, Chavez, and Schwartz to answer Count I of the Complaint and will dismiss the remaining Defendants without prejudice.

**I.   Application to Proceed *In Forma Pauperis* and Filing Fee**

Plaintiff's Application to Proceed *In Forma Pauperis* will be granted. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will assess an initial partial filing fee of $11.94. The remainder of the fee will be collected monthly in payments of 20% of the previous month's income each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according

---

[1] "Doc.#" refers to the docket number of filings in this case.

**TERMPSREF**

to the statutory formula.

## II.   Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

## III.   Complaint

Plaintiff alleges one count in his Complaint for threats to his safety or failure to protect. He sues the following employees of the Arizona Department of Corrections (ADC) at the Eymann Complex: Lieutenants Todd and Sanchez; Deputy Warden Carrillo; Criminal Investigation Unit (CIU) Officer Hernandez; Special Security Unit (SSU) Officers Rodarte, Carlson, and James; and Sergeants Benavidez, Hamilton, and Marrow. He also sues the following ADC employees at the Lewis Complex: Sergeant Schwartz; Correction Officers II Springstein, Chavez, and John Does I and II. Plaintiff also sues Bennie Rollins, the Regional Director at the Central Office of ADC. Plaintiff seeks compensatory, injunctive, and punitive relief.

Plaintiff alleges the following facts in his Complaint: On February 7, 2007, Lieutenant Todd prepared a DI 67[2] packet after Plaintiff was assaulted while confined in Rynning Unit and CIU Officer Hernandez conducted the DI 67 investigation. Plaintiff reported the names of the inmates who had assaulted him despite advice from Todd and Hernandez against doing so because the Aryan Brotherhood (AB) would put him on a hit list. Plaintiff was subsequently approached by SSU Officer Rodarte and Sergeant Benavidez, who informed Plaintiff that if he told them the location of drugs or weapons on the yard, they would

---

[2] DI 67 refers to the process to determine whether an inmate should be placed in protective segregation. See http://www.azcorrections.gov/adc/policy_inclusion.asp?menuName=/all_includes/custommenus/di.htm&fileName=/Policies/DI/DI067.htm.

1 consider that confidential information and Plaintiff's assistance would be noted in his DI 67
2 packet.  Plaintiff told them the location of weapons on the yard and who might have drugs.
3 Nevertheless, Rodarte and Benavidez did not document Plaintiff's assistance in his DI 67.

4       At some point, Plaintiff was denied placement in protective segregation, which he
5 appealed to Regional Director Rollins.  Rollins denied Plaintiff's appeal stating that threats
6 to Plaintiff's safety appeared to be isolated to the Rynning Unit and that alternate placement
7 was available.  Plaintiff was transferred to Special Management Unit I.  Plaintiff "collected
8 information on two Patchholders of the Aryan Brotherhood," including a planned "hit" on
9 CO Gilroy.   (Doc.# 1 at 3A.)  Plaintiff sent a kite to SSU Carlson, but never received a
10 response. On February 23, 2008, Plaintiff turned the information over to Sergeant Hamilton.
11 Hamilton told Plaintiff that he would have to go back to his cell until Monday because no one
12 was available to do a DI 67, but then he would be pulled out.  Instead, five days later, on
13 February 28, 2008, Plaintiff was transferred back to Rynning Unit, apparently without a DI
14 67 investigation being conducted.

15       After arriving at Rynning, Plaintiff was initially placed in the CDU and asked
16 Lieutenant Todd to help him with the DI 67 process, but Todd refused.  Plaintiff waited until
17 he was isolated to request a DI 67 investigation from Sergeant Marrow.  Marrow began to
18 berate and scream at Plaintiff in front of the other inmates and told him he would not get a
19 DI 67 until he went on the yard.  Plaintiff locked himself in the cages, where he was safe.
20 A couple of hours later, COII James pulled Plaintiff into his office and asked him why he
21 refused to go on the yard, began calling him names, and pressured Plaintiff to go onto the
22 yard.  Plaintiff refused and James told Plaintiff he would be going to the "hole" for refusing
23 to house; Plaintiff was returned to the cages.  (Id. at 3B.)  A few hours after that, Lieutenant
24 Sanchez interviewed Plaintiff in his office.  After Plaintiff explained his concerns, Sanchez
25 told Plaintiff that he could not believe that Plaintiff had been "sent to a yard, much less
26 Rynning Unit."  (Id.)  Sanchez further told Plaintiff, however, that because Plaintiff had
27 received a DI 67 within the preceding 30 days, Sanchez could not initiate a new DI 67 and
28 Plaintiff would have to go to the hole for refusal to house until 30 days passed.  Sanchez told

Plaintiff to then see him for assistance. Plaintiff later saw Sanchez in the hole, but Sanchez refused to help. In April 2008, Plaintiff sent an inmate letter to Deputy Warden Carrillo and "explained to her all [his] issues" but "she did nothing." (Id.)

As a consequence of the lack of action by the Defendants at Rynning, in May 2008, Plaintiff was transferred to the Morey Unit, where the inmates who had assaulted Plaintiff in 2007 in the Rynning Unit had been sent. (Id. at 3.) According to Plaintiff, Sergeant Schwartz "originally granted DI 67" before Plaintiff went on the yard. Nine days later, CO II Springstein told Plaintiff to "roll up" because he was going to the yard. Plaintiff responded that he was not going to the yard and Springstein told Plaintiff he had to leave his cell until he was reclassified for refusing to house. Springstein shackled Plaintiff and placed him in a holding cell. A few minutes later Springstein brought leg irons and told Plaintiff he would be transferred to another CDU.[3] Because Plaintiff did not see a transport van when he got outside, he told Springstein and Chavez that he was not going and walked back into the CDU. A few minutes later, a few COs arrived and told Plaintiff he had to go on the yard, but Plaintiff refused. Springstein, Chavez, and the two other COs carried Plaintiff onto the yard. Within 24 hours, Plaintiff was assaulted by AB members and suffered two black eyes and facial lacerations. Plaintiff attempted to DI 67 through SSU and sought assistance from Sergeant Schwartz, without success. Plaintiff alleges that he was "forced" to pay the AB to let him stay on the yard and he endured repeated assaults and threats for five months before he was finally granted DI 67 status.

**IV.    Failure to State a Claim**

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must

---

[3] Although unclear, CDU appears to refer to "Central Detention Unit."

1    allege an affirmative link between the injury and the conduct of that defendant. Rizzo v.
2    Goode, 423 U.S. 362, 371-72, 377 (1976).

3    **A.     Doe Defendants**

4    Plaintiff sues two John Doe Defendants without alleging how either allegedly violated
5    his constitutional rights.  Generally, the use of anonymous type appellations to identify
6    defendants is not favored.  Rule 10(a) of the Federal Rules of Civil Procedure requires the
7    plaintiff to include the names of the parties in the action.  As a practical matter, it is
8    impossible in most instances for the United States Marshal or his designee to serve a
9    summons and complaint or amended complaint upon an anonymous defendant.

10   The Ninth Circuit has held that where identity is unknown prior to the filing of a
11   complaint, the plaintiff should be given an opportunity through discovery to identify the
12   unknown defendants, unless it is clear that discovery would not uncover the identities, or that
13   the complaint would be dismissed on other grounds. Wakefield v. Thompson, 177 F.3d
14   1160, 1163 (9th Cir. 1999) (citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)).
15   Plaintiff may use the discovery processes to obtain the names of the persons whom he
16   believes violated his constitutional rights.  If Plaintiff discovers the identities of these
17   fictitious defendants through the discovery process, or otherwise, he may seek leave of the
18   Court to amend to name these individuals.

19   **B.     Threats to Safety**

20   Plaintiff alleges that the remaining Defendants failed to protect him from threats to
21   his safety.  Prison officials are required to take reasonable measures to guarantee the safety
22   of inmates and officials have a duty to protect prisoners from violence at the hands of other
23   prisoners. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Frost v. Agnos, 152 F.3d 1124,
24   1128 (9th Cir. 1998).  To state a claim for threats to safety, an inmate must allege facts to
25   support that he was incarcerated under conditions posing a substantial risk of harm and that
26   prison officials were "deliberately indifferent" to his safety. Farmer, 511 U.S. at 834; Frost,
27   152 F.3d at 1128; Redman v. County of Los Angeles, 942 F.2d 1435, 1443 (9th Cir. 1991)
28   (*en banc*).  To adequately allege deliberate indifference, a plaintiff must set forth facts to

TERMPSREF                                       - 5 -

1  support that a defendant knew of, but disregarded, an excessive risk to inmate safety.
2  Farmer, 511 U.S. at 837.  That is, "the official must both [have been] aware of facts from
3  which the inference could be drawn that a substantial risk of serious harm exist[ed], and he
4  must also [have] draw[n] the inference."  Farmer, 511 U.S. at 837; Frost, 152 F.3d at 1128;
5  Redman, 942 F.2d at 1442.

6        Defendants Todd, Sanchez, Hernandez, Rodarte, Benavidez, Rollins, Carlson,
7  Hamilton, James, or Carrillo will be dismissed.  Plaintiff fails to allege facts to support that
8  they knew of but disregarded an excessive risk to his safety.  Plaintiff's allegations against
9  these Defendants are vague.  Plaintiff does not allege what he told them when he sought
10 protective segregation or facts to support that anything short of protective segregation posed
11 a substantial risk of serious harm.  He does not allege facts to support that these Defendants
12 knew or should have known that the inmates who had assaulted him at Rynning in 2007 had
13 been transferred to Morey Unit.  That is, while Plaintiff alleges that he was assaulted at the
14 Morey Unit beginning in May, 2008, he does not allege facts to support that his transfer to
15 Morey Unit or the assaults resulted from the earlier conduct of these Defendants.  Plaintiff
16 does not, therefore, adequately allege facts to support that the acts of these Defendants rose
17 to the level of deliberate indifference.  Accordingly, these Defendants will be dismissed.

18 **V.     Claims for Which an Answer Will be Required**

19       Plaintiff alleges that Marrow berated Plaintiff in front of other inmates, including one
20 who later assaulted him at Morey Unit, for seeking placement in protective segregation.
21 Plaintiff alleges that Springstein and Chavez physically carried him onto the Morey Unit yard
22 where he was subsequently assaulted.  Plaintiff alleges that he sought protection from Officer
23 Schwartz, while Plaintiff was at the Morey Unit, but Schwartz failed to act to protect him.
24 These Defendants will be required to respond to the Complaint.

25 **VI.    Warnings**

26     **A.     Release**

27       Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release.
28 Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay

1  the balance or (2) show good cause, in writing, why he cannot.  Failure to comply may result
2  in dismissal of this action.

3       **B.    Address Changes**

4       Plaintiff must file and serve a notice of a change of address in accordance with Rule
5  83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other
6  relief with a notice of change of address.  Failure to comply may result in dismissal of this
7  action.

8       **C.    Copies**

9       Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy
10 of every document that he files.  Fed. R. Civ. P. 5(a).  Each filing must include a certificate
11 stating that a copy of the filing was served.  Fed. R. Civ. P. 5(d).  Also, Plaintiff must submit
12 an additional copy of every filing for use by the Court.  See LRCiv 5.4.  Failure to comply
13 may result in the filing being stricken without further notice to Plaintiff.

14      **D.    Possible Dismissal**

15      If Plaintiff fails to timely comply with every provision of this Order, including these
16 warnings, the Court may dismiss this action without further notice.  See Ferdik v. Bonzelet,
17 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to
18 comply with any order of the Court).

19 **IT IS ORDERED:**

20      (1)    Plaintiff's Application to Proceed *In Forma Pauperis*, filed with the Complaint,
21 is **granted**.

22      (2)    As required by the accompanying Order to the appropriate government agency,
23 Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $11.94.

24      (3)    Defendants Todd, Sanchez, Hernandez, Rodarte, Benavidez, Rollins, Hamilton,
25 Carlson, James, Carrillo, and Does I and II are **dismissed** without prejudice.

26      (4)    Defendants Marrow, Schwartz, Springstein, and Chavez must answer Count
27 I.

28      (5)    The Clerk of Court must send Plaintiff a service packet including the

1  Complaint (doc.# 1), this Order, and both summons and request for waiver forms for
2  Defendants Marrow, Schwartz, Springstein, and Chavez.

3  (6) Plaintiff must complete and return the service packet to the Clerk of Court
4  within 20 days of the date of filing of this Order. The United States Marshal will not provide
5  service of process if Plaintiff fails to comply with this Order.

6  (7) If Plaintiff does not either obtain a waiver of service of the summons or
7  complete service of the Summons and Complaint on a Defendant within 120 days of the
8  filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the
9  action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv
10  16.2(b)(2)(B)(I).

11  (8) The United States Marshal must retain the Summons, a copy of the Complaint,
12  and a copy of this Order for future use.

13  (9) The United States Marshal must notify Defendants of the commencement of
14  this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal
15  Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. The
16  Marshal must immediately file requests for waivers that were returned as undeliverable and
17  waivers of service of the summons. If a waiver of service of summons is not returned by a
18  Defendant within 30 days from the date the request for waiver was sent by the Marshal, the
19  Marshal must:

20  (a) personally serve copies of the Summons, Complaint, and this Order upon
21  Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

22  (b) within 10 days after personal service is effected, file the return of service
23  for Defendant, along with evidence of the attempt to secure a waiver of service of the
24  summons and of the costs subsequently incurred in effecting service upon Defendant.
25  The costs of service must be enumerated on the return of service form (USM-285) and
26  must include the costs incurred by the Marshal for photocopying additional copies of
27  the Summons, Complaint, or this Order and for preparing new process receipt and
28  return forms (USM-285), if required. Costs of service will be taxed against the

personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(10) **A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(11) Defendant must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(13) This matter is referred to Magistrate Judge Mark E. Aspey pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

DATED this 4th day of May, 2009.

_____
Mary H. Murguia
United States District Judge

- 9 -