WO                                                                                                          JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alvalee Sears, III, | No. CV 09-0577-PHX-MHM (MEA) |
| Plaintiff, | **ORDER** |
| vs. | |
| Lieutenant Todd, el at., | |
| Defendants. | |

Plaintiff Alvalee Sears, III, brought this civil rights action under 42 U.S.C. § 1983 against various Arizona Department of Corrections (ADC) employees: Sergeant Marrow, Sergeant Schwartz, Correctional Officer (CO) II Springstein, and CO II Chavez (Doc. #1).[1] Defendants filed a Motion to Dismiss for failure to exhaust administrative remedies (Doc. #15). Plaintiff failed to respond.

The Court will grant Defendants' motion.

**I.     Background**

In his Complaint, Plaintiff set forth the following facts:

In February 2007, during his confinement in the Rynning Unit, Plaintiff was assaulted by other inmates, which led to a DI-67 investigation (Doc. #1 at 3).[2] Despite advice that

---

[1] Upon screening, the Court dismissed Todd, Sanchez, Hernandez, Rodarte, Benavidez, Rollins, Hamilton, Carlson, James, Carrillo, and Does I and II as Defendants (Doc. #4).

[2] DI-67 refers to Director's Instruction 67—the process to determine whether an inmate should be placed in protective segregation. See http://www.azcorrections.gov/adc/policy_inclusion.asp?menuName=/all_includes/custommenus/di.htm&fileName=Policies/DI/DI0

doing so would put him on the Aryan Brotherhood (AB) hit list, Plaintiff reported the names of those inmates who had assaulted him. Plaintiff was ultimately denied placement in protective segregation, and he was placed back on the yard at the Rynning Unit (id. at 3A). He appealed this denial; the appeal was denied on the basis that Plaintiff's issues appeared to be isolated to the Rynning Unit; Plaintiff was assigned to alternate placement (id.).

Plaintiff was sent to Special Management Unit I, where he collected information on AB members and a planned hit (id.). Plaintiff provided this information to a Sergeant and, although he was supposed to be "pulled out" of the unit, a few days later he was transferred back to Rynning Unit. Plaintiff was placed in detention, and he made a request to Marrow for a DI-67 investigation. In response to this request, Marrow yelled at him and told him that he would not get a DI-67 until he went on the yard. Plaintiff refused to go on the yard, despite pressure from ADC officials. Plaintiff states that he was sent to the hole for 30 days for his refusal to go to the yard (id. at 3B).

In May 2008, Plaintiff was transferred to the Morey Unit, where inmates who had previously assaulted Plaintiff at the Rynning Unit were now housed (id. ). Plaintiff requested another DI-67, which Schwartz initially granted. But nine days later, Springstein told Plaintiff to go to the yard. Plaintiff refused, and Springstein explained that Plaintiff had to leave his cell until he was reclassified for refusing to return to the yard. Springstein shackled Plaintiff and placed him in a holding cell (id.). Springstein told Plaintiff that he was going to be transferred to another detention unit, but Plaintiff did not see a transport van so he told Springstein and Chavez he would not leave the holding cell (id. at 3C). Springstein, Chavez, and two other officers carried Plaintiff onto the yard. Within 24 hours, Plaintiff was assaulted by AB members; he received black eyes and lacerations to his face (id.).

Plaintiff attempted to get a another DI-67 investigation and sought assistance from Schwartz, without success. Plaintiff was forced to pay the AB to let him stay on the yard, and he endured repeated assaults and threats for five months until a DI-67 process was finally initiated and approved (id.).

---

67.htm.

1 | Plaintiff alleges that Defendants' actions put his life in danger and constituted a threat to safety in violation of the Eighth Amendment (id. at 3, 3C). He asserted that if Defendants had done a thorough DI-67 investigation and taken action, he would not have suffered (id.).

**II.    Motion to Dismiss**

Defendants contend that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (Doc. #15). In support, they submit the affidavit of Cheryl Dossett, an ADC hearing officer (id., Ex. A, Dossett ¶ 1). Dossett explains that the ADC grievance system is governed by Department Order (DO) 802, "Inmate Grievance System," and that a copy of this policy is available to inmates at each unit's resource library (id. ¶ 4). Dossett states that under DO 802, inmates may grieve issues related to, among other things, staff, visitation, mail, institutional procedures, Department Written Instructions, medical care, and conditions of confinement (id.).

According to Dossett, the initial step in the grievance process requires an inmate to submit an inmate letter to his assigned CO III to attempt to informally resolve the complaint (id. ¶ 6). She states that the next step is a formal grievance, which is forwarded to the deputy warden or a designee, and the final step is an appeal to the Central Office (id. ¶¶ 6, 10). A copy of DO 802 is attached to Dossett's affidavit (id., Attach. 1).

Dossett attests that the grievance coordinator receives and logs all properly-submitted grievances and appeals and returns "unprocessed" grievances that do not comply with the policy (id. ¶ 8). Dossett further attests that she found no entries in the ADC Central Office Grievance Appeal Log showing that Plaintiff filed any final grievance appeals on any of his claims (id. ¶ 13). Defendants therefore argue that Plaintiff failed to exhaust available remedies for his claims and the Complaint must be dismissed (Doc. #15 at 10).

The Court informed Plaintiff of his obligation to respond and the evidence necessary to successfully rebut Defendants' contentions (Doc. #17).[3] Plaintiff did not file a response. The time for responding has expired, and the motion is ready for ruling.

---

[3] Notice required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003).

**III. Exhaustion**

    **A. Legal Standard**

Under the PLRA, a prisoner must exhaust available administrative remedies before bringing a federal action concerning prison conditions. See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001). And a prisoner must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). Thus, the defendant bears the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

    **B. Analysis**

As stated, Defendants bear the burden of proving lack of exhaustion and therefore must demonstrate that there were remedies available to Plaintiff. See Wyatt, 315 F.3d at 1119; see also Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005). Defendants submit evidence that a grievance system was available at the prison (Doc. #15, Ex. A, Dossett Aff. ¶ 4, Attach. 1).

In his verified Complaint, Plaintiff indicated that administrative remedies were available for his claim, and he checked boxes indicating that he submitted a request for administrative relief and appealed that request for relief to the highest level (Doc. #1 at 3). But he also answered the question, "[i]f you did not submit or appeal a request for administrative relief . . . explain why you did not," by stating that DI-67 has its own appeal system, which is not grievable (id.). Defendants' motion does not respond to this averment

in Plaintiff's Complaint; however, Dossett's affidavit confirms that inmates may not use the grievance system for "classification, discipline issues, or any other system which has its own unique appeal process" (id. ¶ 11).

From Plaintiff's allegations, it appears that DI-67 does, in fact, have its own appeal process that allows a prisoner to appeal to the Director after a request for protective segregation has been denied (Doc. #1 at 3A). However, the gravamen of Plaintiff's Complaint is that Defendants' actions *following* the Director's DI-67 denial in February 2008, constituted a threat to his safety (id. at 3A-3C). Specifically, Plaintiff complains about Marrow's conduct when Plaintiff asked her to initiate a DI-67, and he alleges that she refused to do so (id. at 3A-3B). There is no allegation or evidence that Plaintiff grieved or attempted to grieve this refusal by Marrow through either the DO 802 process or as an appeal through the DI-67 process. Plaintiff claims that Springstein and Chavez forced him onto the yard despite the risk to his safety (id. at 3C); their actions were not pursuant to the DI-67 process, and, again, there is no indication that Plaintiff attempted to grieve their actions through any process provided by the prison. Finally, Plaintiff alleges that Schwartz refused to "help" Plaintiff or, apparently, to initiate a DI-67 investigation. Like the claim against Marrow, there is no indication that Plaintiff grieved or attempted to grieve this refusal by Schwartz.

Plaintiff's allegations against Defendants set forth a failure to protect/threat to safety claim under the Eighth Amendment, and therefore concern Plaintiff's conditions of confinement. See Farmer v. Brennan, 511 U.S. 825, 832-33 (1994) (Eighth Amendment imposes duty on prison officials to provide humane conditions of confinement, which includes guaranteeing the safety of inmates and protecting them from violence at the hand of other inmates). Indeed, Plaintiff specifically alleged a violation of his Eighth Amendment rights related to conditions of confinement (Doc. #1 at 3 ¶ 1). The evidence reflects that DO 802 provides a grievance process for issues related to conditions of confinement and that Plaintiff failed to use that process (Doc. #15, Ex. A, Dossett Aff. ¶¶ 4).

Moreover, in failing to respond to Defendants' motion, Plaintiff did not refute Defendants' evidence that he failed to exhaust the available administrative remedies. On this

record, the Court finds that Defendants have met their burden to demonstrate nonexhaustion, and Defendants' motion will be granted.

**IV.     Lack of a Response**

Alternately, the Court has the discretion under Rule 7.2(i) of the Local Rules of Civil Procedure to deem Plaintiff's lack of response as consent to Defendant's motion to dismiss. Plaintiff was warned of this possibility (Doc. # 17). The Ninth Circuit has upheld a dismissal based on a failure to comply with a similar local rule in the District of Nevada. See Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995). Before dismissal on this basis, the court must weigh "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Id. at 53 (quoting Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986)). If the court does not consider these factors, the record may be reviewed independently on appeal for abuse of discretion. Henderson, 779 F.2d at 1424.

The first three factors do not favor Plaintiff, particularly in light of the fact that Plaintiff has ostensibly lost interest in prosecuting his action. There is no risk of prejudice to Defendants to resolve the motion in their favor, and judicial efficiency also favors resolution of this action. The fourth factor of favoring disposition of cases on their merits weighs in Plaintiff's favor, and for the fifth factor, dismissal without prejudice is the least drastic sanction. In light of the overall five-factor analysis weighing in Defendants' favor, the Court will deem Plaintiff's lack of a response as a consent to the granting of the motion and dismiss the action without prejudice.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendants' Motion to Dismiss (Doc. #15).

(2) Defendants' Motion to Dismiss (Doc. #15) is **granted**; Plaintiff's action is dismissed without prejudice for failure to exhaust or, alternately, for failure to respond.

/ / /

1     (3) The Clerk of Court must enter judgment of dismissal accordingly.

2     DATED this 21st day of February, 2010.

_____
Mary H. Murguia
United States District Judge